UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

IN RE:

ROBERT E. HARTE and
DILCIA M. HARTE,                                    Case No. 08-08260
                                                    Chapter 7
                    Debtors.                        Hon. Scott W. Dales

_____/

ROBERT S. MALONEY JR.                               Adv. Pro. No. 09-80123

                    Plaintiff,

v.

ROBERT E. HARTE and
DILCIA M. HARTE,

                    Defendants.

_____/


**FINDINGS OF FACT
AND CONCLUSIONS OF LAW AFTER TRIAL**

          PRESENT:    HONORABLE SCOTT W. DALES
                      United States Bankruptcy Judge


        The following constitutes the court's findings of fact and conclusions of law after trial in

accordance with Federal Rule of Civil Procedure 52 and Federal Rule of Bankruptcy Procedure

7052.  As explained below, the court finds that the Plaintiff Robert S. Maloney, Jr. (the

"Plaintiff") failed to prove his case against Defendants Robert and Dilcia Harte (the

"Defendants").

## I.  JURISDICTION

The court has jurisdiction over the Defendants' bankruptcy case pursuant to 28 U.S.C. §1334(a).  This adversary proceeding is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(I) because it involves the determination of the dischargeability of a particular debt, and 28 U.S.C. § 157(b)(2)(J) because it involves an objection to the Defendants' discharge.  The United States District Court for the Western District of Michigan has referred the case and all related proceedings to the bankruptcy court pursuant to 28 U.S.C. § 157(a) and L.Civ.R. 83.2(a).

Therefore, the court has jurisdiction and statutory authority to enter final judgment in this matter.

## II.  BURDEN OF PROOF

This adversary proceeding challenges the dischargeability of particular debts, as well as the Defendants' entitlement to discharge more generally.  *See* 11 U.S.C. §§ 523 & 727.

Courts narrowly construe exceptions to discharge in favor of the "honest but unfortunate debtor."  *Meyers v. Internal Revenue Service (In re Meyers)*, 196 F.3d 622 (6th Cir. 1999).  In a non-dischargeability action under 11 U.S.C. § 523(a), the plaintiff must prove the case by a preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991).  In proceedings to deny a debtor a discharge under 11 U.S.C. § 727, that same preponderance standard applies.  *Grogan*, 498 U.S. at 289-91.  If the objecting party meets this burden, the debtor must bring forward enough credible evidence to dissuade the court from withholding the debtor's discharge.

III. FACTS

The Plaintiff and Robert E. Harte (the "Defendant")[1] were friends, business associates, and shareholders in a closely-held Honduran corporation known as West Ocean Developments, S.A. ("West Ocean"). In 1999, the Plaintiff and the Defendant decided to build an oceanfront condominium complex -- the Sea Star Beach Resort -- on the island of Roatán in Honduras. The Defendant and non-party Norman Ard ("Ard") contributed to West Ocean the real estate on which the parties intended to build the condominiums.

Although the Defendant's exhibits show that the parties memorialized their business relationship in a written contract (the "Agreement," Def. Exh. A), the Plaintiff denied ever signing it, and testified that the document was not authentic.[2] Through his largely uncontroverted testimony and admitted exhibits, the Defendant explained that in addition to contributing the real estate, the parties agreed that he was to act as the building contractor on the project in exchange for a 25% fee and $2,500.00 per month. He was also to procure all permits and building drawings.

The Plaintiff agreed to provide the financing necessary to build eight luxury condominiums, a swimming pool, infrastructure and roads, all of which were to be completed in an eight to twelve month period. In exchange, the Defendant would own four condominiums, 51% of the West Ocean stock, and 51% of any future condominium units, and the Plaintiff would own four condominiums, 49% of the West Ocean stock, and 49% of any future units. The building project got underway and the parties completed some of the condominium units, but the

---

[1] The Plaintiff named both Mr. and Mrs. Harte as Defendants, but because the Plaintiff's accusations were aimed almost exclusively at Mr. Harte, and only Mr. Harte was involved in the Honduran resort project, the court will refer to him in the singular as "Defendant."

[2] According to the court's Pretrial Order (DN 33), each party had to file any objection to the other's exhibits within 14 days after the exhibit exchange deadline, or the court would regard the unopposed exhibits as authentic. The Plaintiff did not make a timely objection to any of the Defendants' exhibits, including Exhibit A, and the court therefore admitted it at trial over objection.

roads and infrastructure were unfinished when the project stalled. At some point, with the shareholders' approval, the Defendant replaced Ard as president of West Ocean, and took possession of the five stock certificates that represented all of the parties' stock in the company.[3]

The Plaintiff and Defendant were once friendly, but their relationship has since deteriorated. Now, accusations of fraud, criminal activity, and violence abound. The Defendant claims the Plaintiff breached the Agreement by failing to supply adequate financing, which caused the Defendant to be unable to complete the project. The Plaintiff claims the Defendant was misappropriating property and shipping items the Plaintiff purchased for the resort back to the United States and into a storage container for illegal sale. The Defendant claims the Plaintiff set fire to his car, stole valuable papers out of his safe, beat him up, broke into his house, held his wife and him at knifepoint, and brandished semi-automatic firearms.

The Plaintiff maintains the Defendant hid the stock certificates, even after repeated demands for their return, and to this day the Plaintiff claims he does not know their location. The Defendant, however, testified that after the stock certificates became the subject of a lawsuit, a Honduran judge and two attorneys told him to submit the West Ocean stock certificates to the Honduran court's control. Through the assistance of the Honduran judge and the attorneys, the Defendant deposited the stock certificates in a safety deposit box at a bank somewhere in Honduras (Def. Exh. DD).

On April 12, 2004, the Plaintiff and Ard filed a civil action in the United States District Court for the Eastern District of Louisiana against the Defendant, his wife, and West Ocean. In their complaint, the Plaintiff and Ard asserted several causes of action including detrimental

---

[3] Although offering no authority to the court, the Plaintiff and Defendant both seemed to agree that under Honduran law a corporate stock certificate is a bearer instrument. Therefore, in Honduras, whoever has physical custody of the West Ocean stock certificates has total control and authorization to act on behalf of the corporation regardless of the name on the certificate.

reliance, conversion and unjust enrichment.  On August 4, 2005, the United States District Court entered a default judgment against the Defendant and in favor of the Plaintiff for $1,216,607.00 (the "District Court Judgment").[4]  In addition, pursuant to the District Court Judgment, the Plaintiff seized a container in which the Defendant allegedly stored some of the Plaintiff's personal property, as well as some property purchased for the Honduran resort.

The Defendant and his wife filed a voluntary bankruptcy petition under Chapter 7 on September 19, 2008.  After several stipulated extensions, the Plaintiff filed an adversary proceeding complaint (the "Complaint") on March 19, 2009.  In it, he alleged that the District Court Judgment should be given *res judicata* effect, and the debt owed to him by the Defendant should be declared non-dischargeable pursuant to 11 U.S.C. § 523(a)(4), citing the Defendant's alleged diversion of money and other property from the project, his failure to remit the stock certificates, his larceny of the Plaintiff's money invested in West Ocean, as well as the Plaintiff's personal property, including some diving equipment.  In addition, the Plaintiff sought to except his claim from discharge under 11 U.S.C. § 523(a)(6) based upon the Defendant's alleged conversion of the West Ocean stock certificates.

The Complaint also claimed that the court should revoke or deny the discharges of both the Defendant and his wife pursuant to 11 U.S.C. § 727(a)(2) due to the Defendants' alleged possession of the stock certificates and the resulting control of West Ocean.  The Plaintiff also seeks to deny discharge under 11 U.S.C. § 727(a)(4) based upon the Defendants' alleged failure to list an ongoing lawsuit in Honduras (the "Lawsuit"), a Harley-Davidson motorcycle (the "Motorcycle"), a 1986 Chevrolet pick-up truck (the "Truck), and the transfer of some of the

---

[4] At trial, the Defendant argued that the District Court Judgment should be set aside because it was obtained by fraud.  The court declined to set aside the District Court Judgment, reasoning that such relief is only available in the rendering court.  Depending on the outcome of the Defendants' bankruptcy case, however, the discharge injunction may void the District Court Judgment. *See* 11 U.S.C. § 524(a)(1).

condominiums to various Honduran attorneys in exchange for their representation of the Defendant in the Lawsuit.

The court held a bench trial on September 23, 2010, in Traverse City, Michigan.  The Defendant appeared through counsel; the Plaintiff appeared *pro se.*[5] On the Defendant's oral motion, the court precluded the Plaintiff from offering any exhibits or calling any witnesses (other than the parties to the action) because he failed to comply with the Pretrial Order, which required pre-trial filing of exhibits and witness lists.  *See* Pretrial Order dated November 25, 2009 (DN 33) at p. 4 (warning that failure to comply may result in court's preventing unlisted witnesses from testifying and excluding "any exhibit that a party fails to file in compliance with this Order"); *see also* Fed. R. Civ. P. 16(f)(1)(C) & 37(b)(2)(A)(ii)-(vii).

## IV.  ANALYSIS

A.      The Plaintiff's Case Against Mrs. Harte

The court finds that the Plaintiff has not met his burden under 11 U.S.C. § 523(a) as to Mrs. Harte because he offered no proof whatsoever that she had any involvement in the parties' transactions or business venture, except that her name appeared on a Honduran bank account the parties used for wire transfers.  Therefore, the court finds that the Plaintiff's claims are dischargeable as to Mrs. Harte.

As for denying her discharge more generally under 11 U.S.C. § 727, the Plaintiff also offered no proof that she fraudulently omitted any of *her property* from the schedules or made a false oath.  Although she admitted to a role in a suspicious transaction in Honduras involving re-titling a truck in her name to defeat a labor lien, the Plaintiff offered no evidence of the timing of this transaction, and therefore failed to prove the fraudulent transfer occurred during the one-year

---

[5] By order dated May 10, 2010, the court permitted Plaintiff's counsel to withdraw from representation, more than a year after commencement of this adversary proceeding and nearly four months before trial.

period prescribed in 11 U.S.C. § 727. In addition, the testimony suggested that the truck belonged to West Ocean, not the Defendants.

Consequently, and except as may be ordered otherwise in another pending matter,[6] Mrs. Harte shall receive her discharge notwithstanding the Plaintiff's objection advanced through this adversary proceeding.

B.      The Plaintiff's Case Against the Defendant

As noted above, the Plaintiff's case against the Defendant has two components: (1) he seeks to except a particular debt from discharge, and (2) he seeks to deny the Defendant a discharge altogether.

1.      **Relief Under 11 U.S.C. § 523(a)(4)**

Under 11 U.S.C. § 523(a)(4), three distinct acts of malfeasance may justify excepting a debt from discharge: fraud or defalcation while acting as a fiduciary, embezzlement, or larceny. In his Complaint, the Plaintiff alleges all three types of misconduct.

To except a debt from discharge for fraud or defalcation while acting in a fiduciary capacity, the court must find: "(1) a pre-existing fiduciary relationship; (2) a breach of that relationship; and (3) resulting loss." *Board of Trustees v. Bucci (In re Bucci)*, 493 F.3d 635, 642 (6th Cir. 2007). The term "fiduciary" has a narrower meaning in non-dischargeability litigation than in other contexts because § 523(a)(4) covers only "express" or "technical" trusts and not trusts arising out of "the very act of wrongdoing." *Shamrock Floorcovering Services, Inc. v. Patel (In re Patel)*, 565 F.3d 963, 968 (6th Cir. 2009) (*citing Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 331 (1934)). These "constructive trusts," arising at the time the wrong is done, do not

---

[6] The Plaintiff's father, Robert Maloney, Sr., and others are pursuing their own claims against the Defendants in a separate, as yet untried, adversary proceeding. *See* Adv. No. 09-80125.

satisfy the "fiduciary capacity" requirement because the debtor was not "a trustee before the wrong." *Id.*

In short, the scope of § 523(a)(4) is "limited to only those situations involving an express or technical trust relationship arising from placement of a specific *res* in the hands of the debtor." *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 180 (6th Cir. 1997). The existence of an express trust requires a clearly defined trust *res*, an unambiguous trust relationship, and specific, affirmative duties undertaken by a trustee. *PaineWebber Inc. v. Magisano (In re Magisano)*, 228 B.R. 187 (Bankr. S.D. Ohio 1998).

To establish a qualifying trust, the Plaintiff must demonstrate: "(1) an intent to create a trust; (2) a trustee; (3) a trust *res*; and (4) a definite beneficiary." *Patel*, 565 F.3d at 968. The payment of money pursuant to ordinary contract does not, without more, create a specific trust *res*, and there was no evidence at trial that the Plaintiff placed the money for the project in the hands of the Defendant intending to create an express trust.

The parties had an agreement (Def. Ex. A), but the court cannot reasonably construe this document as creating a trust because there is no trust language within it, and it does not express any intent to impose upon the Defendant the duties of a trustee. Perhaps if there had been proof that this transaction occurred in Michigan, the Michigan Builders Trust Fund Act might have created a statutory trust under which the court could impose statutory duties upon the Defendant as fiduciary, because Defendant served as general contractor.[7] If there is an equivalent statutory trust fund act under Honduran law, the Plaintiff failed to bring it to the court's attention. The court does not find in this record any facts supporting a fiduciary relationship within the meaning of 11 U.S.C. § 523(a)(4).

---

[7] Even that argument, however, is doubtful given the reasonable inference that the Plaintiff may have been making equity contributions to West Ocean, rather than payments to the Defendant to construct a building project.

As for the stock certificates, the Defendant acknowledges he had physical custody and control over them, but again, absent a clearly defined express trust outlining specific, affirmative duties undertaken by the Defendant, an action for fraud or defalcation does not arise under § 523(a)(4), regardless of whether there otherwise exists a fiduciary relationship between the parties recognized under Honduran law or otherwise.  Even assuming, *arguendo*, that Honduran law or Louisiana law recognizes fiduciary duties (such as might exist among shareholders in a closely held corporation), the Sixth Circuit follows the narrow construction of the term "fiduciary duty" that does not include all fiduciary relationships recognized by non-bankruptcy law.  *See Patel,* 565 F.3d at 968; *Garver,* 116 F.3d at 178.  Because there is no evidence of an express trust, the court need not resolve whether the Defendant otherwise owed a common law fiduciary duty to the Plaintiff.

Embezzlement and larceny, however, do not require the existence of a trust or fiduciary relationship.  *See Magisano,* 228 B.R. at 190.  In bankruptcy, embezzlement, for purposes of § 523(a)(4), is "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come."  *Bailey v. James (In re James)*, 42 B.R. 265 (Bankr. W.D. Ky. 1984).  Embezzlement differs from larceny in that an embezzler's initial acquisition or custody of the property is lawful; the larcenous defendant never has lawful possession.

To succeed on an embezzlement theory, the Plaintiff must prove:  (1) he entrusted the money for the project and the stock certificates to the Defendant; (2) the Defendant appropriated the property for a use other than that for which it was entrusted; and (3) the circumstances indicate fraud.  *Brady v. McAllister (In re Brady),* 101 F.3d 1165, 1173 (6th Cir. 1996).

According to the Complaint, the parties formed West Ocean to hold all assets necessary to build the project -- the real property and the financing. In other words, although the Plaintiff supplied the financing for the project, he put the money into West Ocean. *See* Complaint at ¶¶ 12, 13, 17, 44. Therefore, it is West Ocean who allegedly entrusted the money for the projects to the Defendant. As such, the Plaintiff has no standing to assert embezzlement on behalf of West Ocean, itself an independent legal entity. Even if the court were to assume the Plaintiff intended to commence this proceeding as a derivative action and obtain a judgment for West Ocean as opposed to himself individually, the Plaintiff has failed to do so in accordance with the applicable rules of procedure. "Shareholder's derivative actions are governed by Rule 23.1 of the Federal Rules of Civil Procedure." *Brown v. Ferro Corp.,* 763 F.2d 798, 802-03 (6th Cir.), *cert. denied*, 474 U.S. 947 (1985). Under this rule, "the corporation is a necessary party to the action; without it the case cannot proceed." *Ross v. Bernhard*, 396 U.S. 531, 538 (1970). The court's Pretrial Order advised the parties that the court had concerns about standing, premised on the role of West Ocean in this matter, but the Plaintiff neglected to address them.

Even if the court were willing to ignore the corporate form and the legal independence of West Ocean, it credits the Defendant's testimony and other evidence that there was a constant shortfall of financing or equity infusions from the Plaintiff, and what money the Defendant did receive he used for the project. (Def. Exh. G-U and Def. Exh. W). The Plaintiff offered no persuasive evidence of circumstances indicating fraud.

As for the stock certificates, these do not belong to West Ocean so the Plaintiff may have a right to assert an embezzlement claim against the Defendant directly on account of his own shares. Both parties agree that in Honduras, stock certificates are bearer instruments. The

Defendant contends that his possession of the stock certificates and eventual tender to the Honduran tribunal was lawful in Honduras.  The Plaintiff disagrees.

The Plaintiff, however, offered no authority regarding what constitutes embezzlement in Honduras, or the legal recourse a party has when stock certificates fall into the wrong hands.[8]  As part of his burden of proof, the Plaintiff was required to provide the court with authoritative Honduran law regarding whether the Defendant's actions constituted an illegal misappropriation of property.  Federal Rule of Civil Procedure 44.1, made applicable to bankruptcy through Federal Rule of Bankruptcy Procedure 9017, specifically states in pertinent part:  "[a] party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing."  If, under Honduran law for example, the manner in which the Plaintiff requested the stock certificates was improper because a written request or a court hearing was required, then the Defendant was within his rights to keep the certificates.  Indeed, the Defendant offered credible testimony, without objection, to the effect that the steps he took with respect to the stock certificates -- tendering them to the Honduran court or pursuant to the court's direction -- suggests that his actions were appropriate.  Because West Ocean was a corporation formed under the laws of Honduras, it would seem likely that Honduran law would establish procedures for custody of stock certificates, including custody during a shareholder dispute such as the one that evidently developed between Messrs. Ard, Maloney, and Harte.  The Plaintiff, as the party challenging the discharge or dischargeability of a particular debt, bears the burden of informing the court of the basis for relief.  In this case, however, the Plaintiff offered no such authority or testimony.  *See* Fed. R. Civ. P. 44.1.  Before the court would be willing to declare a debt non-dischargeable based on a debtor's violation of legal duties in a foreign land, it must have proof of

---

[8] The court recognizes that "embezzlement" for purposes of § 523(a)(4) is a federal term, but cannot evaluate the Defendant's conduct without considering the applicable legal system in which the parties found themselves at the relevant time.

the governing law.  The court finds the Plaintiff has not met his burden and has failed to prove the Defendant embezzled the stock certificates when he refused to deliver them to the Plaintiff.

To succeed on a larceny theory, the Plaintiff must show that the Defendant has wrongfully taken the property of another, intending to permanently convert it to his own use. *Morganroth & Morganroth v. Stollman (In re Stollman)*, 404 B.R. 244 (Bankr. E.D. Mich. 2009); *Sulpher Partnership v. Piscioneri (In re Piscioneri)*, 108 B.R. 595 (Bankr. N.D. Ohio 1989).

The Plaintiff alleges that the money he gave the corporation to finance the condominium project was fraudulently and wrongfully taken by the Defendant without the Plaintiff's consent. Again, this is not the Plaintiff's cause of action:  the money invested for the condominiums belonged to West Ocean.  Therefore, the Defendant's actions as they pertain to the Plaintiff cannot support relief under 11 U.S.C. § 523(a)(4).  Moreover, the Plaintiff offered no credible proof that the Defendant diverted any funds.  Instead, the court credits the Defendant's testimony that he used the funds to develop a first-rate resort.  Indeed, the Plaintiff himself testified that the two men were on track toward developing a fabulously successful project, and in fact completed several units.  It would appear, however, that diminished financing and labor trouble side-tracked their progress.  The Plaintiff attempts to hold the Defendant responsible, which he may well have been, but offers no competent proof of misconduct in the nature of larceny or embezzlement of funds directed to the project.  Indeed, the Plaintiff himself posits an innocent explanation for the Defendant's inability to complete the project, suggesting that the Defendant suffered from a medical or emotional breakdown while in Honduras.

As for the Plaintiff's diving equipment and other personal property, the Plaintiff testified, apparently without contradiction, that when he was in a resale store in Louisiana he saw his dive

tank, regulator, and other property for sale.  After inquiring of the shopkeeper and another person about the chain of ownership, he became convinced that the dive equipment and accessories were in fact his.  In addition, the Plaintiff, apparently with the assistance of the police, also found certain pieces of his personal property locked in a container the Defendant shipped from the resort in Honduras.  There was no evidence that the criminal authorities took any action against the Defendant, and it is unclear whether the Plaintiff seized and recovered this property.

The Defendant did not deny taking the items but claimed his actions were justified because the Plaintiff owed him money.  In addition, the Defendant testified that he was told by the Honduran state attorney to sell the items, although there is no supporting documentation regarding those instructions.

If the Plaintiff had established the value of the personal property with enough particularity, and if he had established that the Defendant permanently deprived him of the use of these items, the court might have been inclined to grant relief with respect to this property, given the Defendant's unsubstantiated excuses.  However, having invoked the court's jurisdiction to establish the fact and amount of the debt as well as declare it excepted from discharge, and having failed to establish the particulars, the court is unable to grant the Plaintiff relief.  Indeed, it seems just as likely that the Plaintiff recovered the items with assistance from police authorities, as not.[9]

A plaintiff who seeks recovery of a non-dischargeable debt should not leave the court to speculate about the debt.  Consequently, although this aspect of the case presents a much closer call, the court finds that the Plaintiff is not entitled to relief regarding his diving equipment and the other personal property.

---

[9] If the Plaintiff did recover the items, his damages would be limited to the temporary deprivation of the use, or permanent diminution in value of the items he recovered.  He offered no proof of either aspect of damages.  As noted elsewhere in this Opinion, the Plaintiff's evidence does not preponderate in his favor.

2.       **Relief Under 11 U.S.C. § 523(a)(6)**

To except a debt from discharge under 11 U.S.C. § 523(a)(6), the debt must arise from a willful and malicious injury by a defendant to another entity or to the property of another entity. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455 (6th Cir. 1999).  The act must be done with the actual intent to cause injury.  *Id.*  In other words, a plaintiff must prove that a defendant not only intended the act that caused the harm, but intended the harm.  *Kawaauhau v. Geiger*, 523 U.S. 57 (1998).

The Plaintiff alleges that the Defendant intended to cause him harm when he refused to tender the stock certificates and later when he deposited them in a safety deposit box, presumably controlled by the Honduran court.  (Def. Exh. DD).  The Defendant testified that on the advice of two Honduran attorneys and a Honduran judge he was required to deposit the stock certificates with the court because they were the subject of a Honduran lawsuit between the Plaintiff and the Defendant.  The Plaintiff did not contest this fact.  Consequently, the court finds that by depositing the stock certificates with the court in Honduras, with the ownership rights to be determined at a later date, the Defendant did not harm the Plaintiff.  He simply chose to have the court determine ownership rights in the stock certificates instead of continuing to submit to the Plaintiff's alleged threats and coercion.  Any interference with the Plaintiff's interest in the certificates appears to have been allowed under Honduran law.

3.       **Relief Under 11 U.S.C. § 727(a)(2)(A)**

To successfully object to a discharge under 11 U.S.C. § 727(a)(2)(A), a creditor must establish:  (1) the act complained of was done within one year before the petition date; (2) the debtor acted with actual intent to hinder, delay, or defraud a creditor; (3) the act was that of the

debtor; and (4) the act consisted of transferring, removing, destroying, or concealing any of the debtor's property.

The Plaintiff alleges that the Defendant transferred, removed, destroyed or concealed the stock certificates and under 11 U.S.C. § 727(a)(2)(A) should forfeit his bankruptcy discharge. However, according to the Certificate of Jose Antonio Zuazo Mejia, a Honduran attorney and notary, the stock certificates were deposited with the court on August 7, 2006.  (Def. Exh. DD). Because the Defendant filed bankruptcy on September 19, 2008, more than two years later, 11 U.S.C. § 727(a)(2)(A) is inapplicable.  Even assuming the Plaintiff could establish the other elements of his case under this section, the act occurred more than one year before the Defendant filed his bankruptcy petition.

4.    **Relief Under 11 U.S.C. § 727(a)(4)**

To deny the Defendant a discharge under 11 U.S.C. § 727(a)(4), the Plaintiff must prove that:  (1) the Defendant made a statement under oath; (2) the statement was false; (3) the Defendant knew the statement was false; (4) the Defendant made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.  *Keeney v. Smith (In re Keeney),* 227 F.3d 679, 685 (6th Cir. 2000).  "Actual fraudulent intent -- not the lesser intent of § 727(a)(2) to delay, hinder a creditor or the trustee is required."  *Bauman v. Post (In re Post)*, 347 B.R. 104, 112 (Bankr. M.D. Fla. 2006).  There must be "specific facts or circumstances which point toward fraud."  *Garcia v. Coombs (In re Coombs)*, 193 B.R. 557, 564 (Bankr. S.D. Cal. 1996).

The Plaintiff claims the Defendant omitted the Motorcycle, the Truck, the condominium transfers, and the Lawsuit from his bankruptcy schedules and related statements.  The Lawsuit, however, is clearly listed on Schedule B.  As for the Motorcycle and the Truck, the Defendant

testified that he told his bankruptcy attorney about these items, mentioning that he was not sure who owned the vehicles, that the Plaintiff took them, and that the Plaintiff told him they were destroyed in Hurricane Katrina. His attorney advised him to leave them off the schedules. The court credits this testimony and finds no persuasive evidence of fraudulent intent.

A colorfully worded e-mail dated May 30, 2002 from the Plaintiff corroborates the Defendant's testimony to some extent: the Plaintiff states: "[i]f you think you are going to get your bike and truck back you are . . . crazy. They are mine now . . ." (Def. Exh. X).

In addition, both parties testified that the Plaintiff bought a truck for West Ocean, and if this truck was the Truck, it would not have been included within the property of the Defendant's bankruptcy estate in any event. Moreover, given the nexus of the parties and this case to New Orleans, the Defendant plausibly testified that he assumed the items were lost during Hurricane Katrina.

Consequently, the facts surrounding the Truck and the Motorcycle establish non-disclosure, but not fraud. In short, the court credits the Defendant's testimony, and his exhibit, and finds he did not intentionally leave these items off of his schedules, if in fact they even belonged to him or remained in existence on the petition date.

As for the condominiums, although mentioned in his Complaint, the Plaintiff did not actively pursue this line of questioning and therefore failed to show there were any condominiums built that had not previously been sold or lost. By the Plaintiff's own testimony, three condominiums were foreclosed on. The Defendant's exhibits show purchase agreements for another two. It is unclear whether more than five condominiums were ever built. Moreover, the facts adduced at trial suggest that the condominiums belonged at some point in time to West Ocean. Accordingly, the court will not charge the Defendant with a duty to list condominiums

Page 16 of 18

on his schedules that the Plaintiff has failed to prove belonged to the Defendant on the petition date.

Last, the Plaintiff claims that the stock certificates were not listed on the Defendant's bankruptcy schedules and the Defendant intentionally concealed them from the bankruptcy trustee.  First, the Plaintiff has failed to show that the supposed non-disclosure of the stock certificates was fraudulent or material.  The Defendant listed his stock ownership on Schedule B, line 13, although he did not report them on the Statement of Financial Affairs (in response to Question 6(b)) or state that the shares were in the custody of the Honduran court.  Because the Defendant listed his ownership of the shares on Schedule B, the court is not willing to find that his omission from the Statement of Financial Affairs, Question 6(b), amounts to fraudulent concealment of any assets from his bankruptcy schedules, or false oath.  He tendered the shares to the Honduran authorities in 2006, and testified that they were in the possession of a Honduran bank, albeit at the foreign tribunal's instruction.  Under the circumstances, the court finds that the omission from the Statement of Financial Affairs, though technically deficient, does not warrant denial of discharge.

## V.  CONCLUSION

The Plaintiff failed to present evidence preponderating in favor of finding fraud or other misconduct on the Defendants' part, or otherwise warranting an order excepting any debt from discharge.  He similarly failed to make a case for denying discharge altogether.

The court has no doubt that the Plaintiff feels the Defendant wronged him in connection with the resort development, and the various items shipped from Honduras.  The Plaintiff certainly succeeded in communicating that conviction to the court.  Nevertheless, the record developed at trial does not support his theory of the case.

Accordingly, the court will prepare a separate judgment dismissing the Complaint with prejudice, and without costs to either party.

**IT IS SO ORDERED.**

Scott W. Dales
United States Bankruptcy Judge

**Dated: October 14, 2010**